IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

KIERAN JOSEPH LIEBL, INC. d/b/a      §
ROYAL OAKS DESIGN, INC.,             §
                                     §
            Plaintiff,               §
                                     §
       v.                            §
                                     §
EAP CONSTRUCTION, LLC, PAULO         §     Case No. 1:24-cv-12486-RGS
PINHEIRO, NICHOLE SLINEY             §
REALTY TEAM, INC., and NICHOLE       §
SLINEY,                              §
                                     §
            Defendants.              §

**PLAINTIFF'S MEMORANDUM IN OPPOSITION TO
EAP DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

Plaintiff Kieran Joseph Liebl, Inc. d/b/a Royal Oaks Design, Inc. ("ROD") files this memorandum in opposition to the motion for summary judgment (the "Motion"; Doc. 41-42) by Defendants EAP Construction, LLC ("EAP") and Paulo Pinheiro ("Pinheiro") (collectively, the "EAP Defendants").[1]

**INTRODUCTION AND SYNOPSIS**

The Motion ignores the undisputed facts of the case, ignores controlling First Circuit copyright precedent, and misanalyzes fundamental copyright law principles.

---

[1]     ROD's opposition also relies on its Response to the EAP Defendants' Statement of Undisputed Material Facts ("ROD's RSUMF") and the evidence identified in and attached to it, filed herewith and summarized in pertinent parts herein.  *See* Local Rule 56.1.  ROD also relies on and incorporates by reference its Memorandum in Support of its Motion for Partial Summary Judgment (Doc. 39; "ROD's MSJ Memo"), and the summary judgment evidence cited therein.

1

First, the Motion ignores that all Defendants in this case admit to reproducing and distributing *literal* copies of ROD's architectural and graphical works, and that such activities are copyright infringement.

Second, the Motion ignores clear First Circuit precedent that all aspects of ROD's works are presumptively protected, and ***Defendants*** are required to identify any particular aspect of ROD's works that they believe are not "worthy of copyright protection" ***and prove that with admissible evidence.*** The Motion fails to do so, nor could it because Defendants have never identified any such aspects or evidence in response to ROD's discovery requests.

Third, the Motion utterly ignores that the Copyright Act grants ROD the exclusive right to control the creation of "derivative works." EAP's admitted modification of ROD's protected building designs does not obviate its copyright infringement, but instead admits to the unauthorized creation of derivative works – which itself is copyright infringement, as the Supreme Court has recently reiterated.

Fourth, the Motion relies on a discredited line of cases from the Eleventh and Seventh Circuits, which asserts that architectural works copyrights are inherently "thin" as a matter of law, and thus can be infringed only by exact or near-exact copying. Besides being illogical, squarely contradicted by the text and legislative history of the Architectural Works Copyright Protection Act of 1990 (the "AWCPA"), and improperly abrogating this country's treaty obligations, such cases are inconsistent with controlling First Circuit architectural copyright law. They are also inapplicable to Defendants' infringement of ROD's graphical works copyrights, and their making and distributing literal copies of ROD's works.

Finally, the Motion utterly misanalyzes the defense of *de minimus* copying, asserting a temporal basis for that defense that is wholly unsupported in the law (as well as being contrary to

the undisputed facts of this case).

The Motion is meritless, and should be denied.

## ARGUMENT

I.      **Defendants Reproduced / Distributed** *Literal* **Copies of ROD's Works.**

As detailed in ROD's MSJ Memo, there is no dispute that ROD owns valid copyrights in the works in suit.[2]  Nor is there any question that Defendants reproduced and distributed literal copies of ROD's floorplan drawings:  EAP / Pinheiro downloaded and sent such copies to NSRT, Sliney, and the draftsman of the construction plans for the house in question, and NSRT / Sliney (while acting as EAP's real estate agent) reproduced and distributed such copies in connection with the marketing of this house.[3]  This establishes the two elements of copyright infringement.[4]

The Motion never addresses this critical fact; indeed, it misrepresents the record by claiming that the Defendants merely downloaded and reproduced ***photographs*** of a house constructed from ROD's copyrighted design.[5]  As the side-by-side comparison in ROD's MSJ Memo conclusively establishes (*see* Doc. 39 at p.8), Defendants also reproduced literal copies of ROD's floorplan ***drawings***.   Such drawings are covered by ROD's "architectural works" copyrights.[6]  They are also covered by ROD's pictorial / graphical / sculptural works copyrights.[7]

---

[2]      *See* Doc. 39 at pp.3-5 and the summary judgment evidence cited therein.

[3]      *See* Doc. 39 at pp.5-9 and the summary judgment evidence cited therein.

[4]      *See, e.g.*, *Soc'y of the Holy Transfiguration Monastery, Inc. v. Archbishop Gregory of Denver, Colorado*, 754 F. Supp. 2d 219, 223 (D. Mass. 2010) ("*Holy Transfiguration*"); *aff'd sub nom. Soc'y of Holy Transfiguration Monastery, Inc. v. Gregory*, 689 F.3d 29 (1st Cir. 2012).

[5]      *See, e.g.* Doc. 42, pp.18-19.

[6]      *See* 17 U.S.C. § 101 (definition of "architectural work" is "the design of a building as embodied in any tangible medium of expression, including a building, architectural plans, ***or drawings*** . . . ." (emphasis added)).

[7]      The First Circuit recognizes that the creator of such architectural drawings enjoys two copyrights: one in the architectural work depicted and one in the graphical work. *T-Peg, Inc. v.*

The EAP Defendants argue that the constructed house in question does not infringe ROD's architectural works copyright as a matter of law because they modified ROD's design.  As detailed *infra*, this argument is meritless.  But regardless of the Court's resolution of that issue, the undisputed evidence establishes that Defendants infringed ROD's exclusive rights of reproduction and distribution by making and disseminating literal copies of ROD's floorplan drawings, in violation of its architectural and graphical works copyrights.  This fact alone defeats the instant Motion.

**II.     The EAP Defendants Have Not, and Cannot, Establish That Any Portion of ROD's Works Are Not Protected.**

The Motion argues that non-original elements of a work are not protected by copyright.[8] However, the Motion fails to address the critical issue: that ***EAP Defendants*** have the burden of identifying what aspects of the works in suit are not protected and proving why they are not.  They have failed to do so.   Their arguments regarding the purported "non-original" aspects of ROD's works are thus not supported by any summary judgment evidence.

A.      The EAP Defendants Have the Burden of Proof, and Have Failed to Meet It.

As detailed in ROD's MSJ Memo (Doc. 39 pp.3-5), each ROD copyright registration certificate is "*prima facie* evidence of copyrightability and shifts the burden to the defendant to

---

*Vermont Timber Works, Inc.*, 459 F.3d 97, 109-10 (1st Cir. 2006); *see also Scholz Design, Inc. v. Sard Custom Homes, LLC,* 691 F.3d 182, 186-187 (2d Cir. 2012) ("[c]opyright protection of a pictorial work, whether depicting a house, or a flower, or a donkey, or an abstract design, does not depend on any degree of detail. . . .  We see no reason why Scholz's drawings depicting the appearance of houses it had designed should be treated differently from any other pictorial work for copyright purposes.")

[8]      *But see T-Peg,* 459 F.3d at 110 ("while individual standard features may not be individually copyrightable, as the quoted legislative history above confirms, the combination of such standard features may be copyrightable").

demonstrate why the copyright is not valid."[9]   The First Circuit holds that once this § 410(c) presumption is triggered, "it is incumbent upon a putative infringer to establish that the work in which copyright is claimed is unprotectable (for lack of originality) or, more specifically, to prove that the portion of the copyrighted work actually taken is unworthy of copyright protection."[10]

The Motion **argues** that not all aspects of ROD's works are protected.  However, like the defendant in *Holy Transfiguration*, the EAP Defendants never identify any **particular** aspects or elements of ROD's works that are not original or otherwise "unworthy of copyright protection."[11] Nor have the EAP Defendants adduced any evidence proving why they are not.  Moreover, ROD has adduced summary judgment evidence is that the works in suit were created without copying anyone else's work.  *See* Doc.40-1, pp. 3-4, ¶¶ 5-7 (Declaration of K.J. Liebl).  Along with ROD's copyright registration certificates, this unrebutted summary judgment evidence establishes that all aspects of ROD's works in suit are indeed "worthy of copyright protection."

B.    Rule 37(c)(1) Precludes Any Such Evidence From EAP Defendants.

Nor could the EAP Defendants adduce any such summary judgment evidence now.  As detailed in ROD's MSJ Memo (Doc. 39 at pp.4-5), ROD served discovery on Defendants seeking the basis for and identification of evidence supporting any contention that any portion of ROD's works was not protected, and also included this as a topic for the Rule 30(b)(6) depositions in this case.  Yet neither the EAP Defendants nor any other Defendant have ever identified any portion

---

[9]    *Holy Transfiguration, 754 F. Supp. 2d at 223* (cleaned up; citing *Lotus Dev. Corp. v. Bortland, Int'l, 49 F.3d 807, 813 (1st Cir. 1995)*, quoting *Bibbero Sys., Inc. v. Colwell Sys., Inc., 893 F.2d 1104, 1106 (9th Cir.1990)*).

[10]    *CMM Cable Rep, Inc. v. Ocean Coast Props., Inc., 97 F.3d 1504, 1513 (1st Cir. 1996)* (quoting *Bateman v. Mnemonics, Inc., 79 F.3d 1532, 1541 (11th Cir.1996)*).

[11]    *See Holy Transfiguration, 689 F.3d at 52* ("it is not the job of this court to do [appellant's] work for him").

of any ROD work that was allegedly not protected, articulated why it was not, or produced any evidence to support such claims.  Having chosen not to do so during the fact discovery phase of this case, Rule 37(c)(1) precludes the EAP Defendants from ambushing ROD with any such claims or evidence now.

C.     The Websites Cited by Defendants Prove Nothing.

The closest the EAP Defendants actually come to any evidence of unprotectability is a footnote (Doc. 42, p.18, n.62) referencing two website articles that discuss "modern farmhouse design."[12]  Such references are not summary judgment evidence, and to the extent they are offered as such ROD objects to them as unauthenticated, inadmissible hearsay and double hearsay, and opinion evidence without any predicate for their admission as expert opinions.  As detailed *supra*, ROD also objects to them under Rule 37(c)(1), as they were not identified or produced during the fact discovery phase of this case, and thus cannot be used as evidence.

But even ignoring ROD's objections, at best all these websites show is that other "modern farmhouse" design houses exist.   But there is no evidence that suggests that ROD copied or was even aware of these other designs (or indeed if the houses discussed even existed before ROD

---

[12]     The EAP Defendants also cite cases holding that elements that are required by building codes may not be protected; elements that are "functionally required" may not protected; that when an idea can be expressed in very few ways, that expression may not be protected; arrangements that are so common to be *scenes-a-faire* may not be protected; etc.  Doc. 42 pp.5-6.  ROD disputes that such cases accurately state the law or are applicable here, but the issue is moot.

As did the defendant in *Holy Transfiguration*, the EAP Defendants fail to identify any particular aspects of ROD's works that allegedly fall into any of these categories, or adduce any evidence showing that any of these situations actually exist (*e.g.*, there is no evidence that there are, in fact, "very few ways" to design a "modern farmhouse" style house; indeed, the actual evidence is to the contrary).  *See* Doc. 48-3 (Declaration of K.J. Liebl); *see generally Danze & Davis Architects, Inc. v. Legend Classic Homes, Ltd.*, No. CIV.A. H-10-0216, 2011 WL 2940671, op. at 5 (S.D. Tex. July 19, 2011).  Nor is there any evidence of what, if any, elements of ROD's designs are "functionally required" or mandated by building codes).  And again, had the EAP Defendants adduced any such evidence, ROD would object to it as precluded by Rule 37(c)(1), as the time for the EAP Defendants to identify and produce it was long ago.

created the designs in suit), nor how similar or dissimilar the designs discussed are to ROD's designs (the articles do not include any floorplans).

More importantly, this is not a patent case, where evidence of "prior art" can impact the validity of the patent.   As Judge Learned Hand famously explained:

> [I]t is plain beyond peradventure that anticipation as such cannot invalidate a copyright. Borrowed the work must indeed not be, for a plagiarist is not himself *pro tanto* an 'author'; but if by some magic a man who had never known it were to compose anew Keats's Ode on a Grecian Urn, he would be an 'author,' and, if he copyrighted it, others might not copy that poem, though they might of course copy Keats's. [13]

The Supreme Court also recognizes this principle:

> To qualify for copyright protection, a work must be original to the author. Original, as the term is used in copyright, means only that the work was independently created by the author (as opposed to copied from other works), and that it possesses at least some minimal degree of creativity.  To be sure, the requisite level of creativity is extremely low; even a slight amount will suffice. The vast majority of works make the grade quite easily, as they possess some creative spark, "no matter how crude, humble or obvious" it might be.
>
> Originality does not signify novelty; a work may be original even though it closely resembles other works so long as the similarity is fortuitous, not the result of copying. To illustrate, assume that two poets, each ignorant of the other, compose identical poems. Neither work is novel, yet both are original and, hence copyrightable.[14]

In the *Fred Fisher* case, Judge Hand similarly explained why the existence of prior art does not invalidate a copyright as long as the copyright owner created his work independently of the prior

---

[13]     *Sheldon v. Metro-Goldwyn Pictures Corp.*, 81 F.2d 49, 53 (2d Cir.), *cert denied*, 298 U.S. 669 (1936); *see also Boisson v. Banian, Ltd.*, 273 F.3d 262, 270 (2d Cir. 2001) ("Absent evidence of copying, an author is entitled to copyright protection for an independently produced original work despite its identical nature to a prior work, because it is independent creation, and not novelty that is required").

[14]     *Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 345-46 (1991) (citations omitted; paragraph break inserted); *see also Baker v. Selden*, 101 U.S. 99, 102 (1879) ("[t]he novelty of the art or thing described or explained has nothing to do with the validity of the copyright").

art.[15]  Years later, on the Second Circuit Judge Hand again explained this difference between patent

law and copyright law:

> We are to remember that it makes no difference how far the play was anticipated
> by works in the public demesne which the plaintiffs did not use. The defendants
> appear not to recognize this, for they have filled the record with earlier instances of
> the same dramatic incidents and devices, as though, like a patent, a copyrighted
> work must be not only original, but new. That is not however the law . . . .[16]

Likewise, in *Stein v. Mazer*, the Fourth Circuit followed *Sheldon* and subsequent case law to hold

that the existence of similar works in the public domain did not invalidate a copyright because

there was no evidence that the copyright owner copied them.[17]  When it affirmed that decision, the

Supreme Court also cited Judge Hand's *Fred Fisher* opinion with approval.[18]

Put simply, the EAP Defendants offer nothing to rebut ROD's showing that its works are

wholly original, or to prove that any portion of them are "not worthy of copyright protection."

**III.    "But I Changed It" Is Not A Defense To Copyright Infringement.**

As detailed in ROD's Statement of Undisputed Material Facts (Doc. 40, p.7) and

Declaration of Serge Lalanne (Doc. 40-12) attached to it, the draftsman who created the plans for

the house in suit admits that it was created from the floorplan drawings and photographs of ROD's

'Ruth Ann" design, with changes directed by EAP.  The Motion does not dispute this.  Instead, it

focuses on cataloging all the various changes that EAP made during the design and construction

processes, and essentially argues that because EAP "made changes" to ROD's design (both at the

design phase and during construction), the EAP Defendants have avoided infringement and are

---

[15]      *See Fred Fisher, Inc. v. Dillingham*, 298 F. 145, 147 (S.D.N.Y. 1924).

[16]      *Sheldon,* 81 F.2d at 53.

[17]      *Stein v. Mazer*, 204 F.2d 472, 474-75 (4th Cir. 1953), *aff'd*, 347 U.S. 201 (1954).

[18]      *See id.*, 347 U.S. at 217

entitled to summary judgment because the house is no longer "substantially similar" to ROD's "Ruth Ann" design.

This argument is simply wrong. As detailed *supra*, it ignores that all Defendants reproduced and distributed *literal* copies of ROD's floorplan drawings, and thus even if the EAP Defendants' faulty argument was correct they *still* would not be entitled to summary judgment. Moreover, the First Circuit is clear that while "[d]ifferences between the works have some effect on the inquiry, . . . *the mere existence of differences is insufficient to end the matter in the defendant's favor*."[19]

Indeed, as this Court and the First Circuit both recognize, it is well-established that "no plagiarist can excuse the wrong by showing how much of his work he did not pirate."[20] Whether a defendant pirated sufficient original expressions to satisfy the "ordinary observer" test is typically a question of fact that cannot be decided on summary judgment.[21]

---

[19]    *T-Peg, Inc. v. Vt. Timber Works, Inc.*, 459 F.3d 97, 112 (1st Cir. 2006) (emphasis added); *see also CSM Invs., Inc. v. Everest Dev., Ltd.*, 840 F. Supp. 1304, 1312 (D. Minn. 1994) ("It is the presence of substantial similarities, however, rather than differences which determines whether infringement exists. The existence of differences will not negate infringement unless they so outweigh similarities that the similarities can only be deemed inconsequential within the total context of the copyrighted work" (citations omitted, cleaned up)).

[20]    *Holy Transfiguration*, 754 F. Supp. 2d at 227, *affirmed*, 689 F.3d at 63 (both decisions quoting *Sheldon*, 81 F.2d at 56 (Hand, J.) and citing the Supreme Court's endorsements of Judge Hand's famous articulation of the law). Indeed, this has been settled law for almost 200 years. As Justice Joseph Story, sitting as a circuit judge, observed long ago:

> It is certainly not necessary, to constitute an invasion of copyright, that the whole of a work should be copied, or even a large portion of it, in form or in substance. If so much is taken, that the value of the original is sensibly diminished, or the labors of the original author are substantially to an injurious extent appropriated by another, that is sufficient, in point of law, to constitute a piracy pro tanto. The entirety of the copyright is the property of the author; and it is no defence [sic], that another person has appropriated a part, and not the whole, of any property.

*Folsom v. Marsh*, 9 F. Cas. 342, 348 (C.C.D. Mass. 1841) (Story, J.).

[21]    *See, e.g., Sturdza v. United Arab Emirates*, 281 F.3d 1287, 1296 (D.C. Cir. 2002) (architectural works copyright case; reversing summary judgment on noninfringement, observing

More fundamentally, the EAP Defendants ignore the derivative works exclusive right.  As the Supreme Court has recently reiterated, one of the exclusive rights a copyright owner enjoys is the right to control the creation of derivative works: "a work based upon one or more preexisting works, such as . . . any other form in which a work may be recast, transformed, or adapted."[22]  In *Andy Warhol Found. for the Visual Arts, Inc. v. Goldsmith*, 598 U.S. 508 (2023), the Supreme Court dealt with Andy Warhol's modifications of a photographer's celebrated photograph of the musician Prince:



While recognizing that Warhol had indeed substantially "changed" the work, the Court nevertheless recognized that by starting with the protected photograph and making changes to it, Warhol had created a derivative work.  Because he did not have permission from the photographer to make or distribute those derivative works, his doing so infringed the photographer's exclusive right to control the creation and distribution of derivative works, and thus committed copyright infringement.[23]

The First Circuit has long recognized the derivative works exclusive right.[24]  Nevertheless,

---

that "because substantial similarity is customarily an extremely close question of fact, summary judgment has traditionally been frowned upon in copyright litigation" (*quoting A.A. Hoehling v. Universal City Studios, Inc.*, 618 F.2d 972, 977 (2d Cir.1980)).

[22]    17 U.S.C. § 101 (definition of derivative works).

[23]    *See Warhol Found.*, 598 U.S. at 529, 541.

[24]    *E.g.*, *Perea v. Ed. Cultural, Inc.*, 13 F.4th 43, 52 (1st Cir. 2021) (*citing and quoting Petrella v. Metro-Goldwyn-Mayer, Inc.*, 572 U.S. 663, 668, (2014)); *Coquico, Inc. v. Rodriguez-Miranda*, 562 F.3d 62, 66 (1st Cir. 2009) ("The holder of a valid plush-toy copyright possesses

the Motion relies heavily on the following dicta from *Harney v. Sony Pictures Television*, 704 F.3d 173, 188 (1st Cir. 2005):  A defendant may "legitimately avoid infringement by intentionally making sufficient changes in a work which would otherwise be regarded as substantially similar to that of the plaintiff's."  However, that statement was ***not*** the actual holding of that case, but was stray dicta.  *Harney* actually involved a motion picture's recreation of the taking of a specific photograph by an (in)famous photographer by using similar models and poses, ***not*** by actually copying or modifying the protected expression (*i.e.*, photograph itself).[25]  Here, ROD's protected architectural works copyright is to the ***design*** of the building.[26]  ***That*** is what EAP took and modified (in addition to reproducing and distributing literal copies of ROD's floorplan drawings, in violation of both ROD's architectural works and graphical works copyrights).

To the extent that the EAP Defendants argue that *Harney* holds that a defendant can avoid infringement by making changes to a copyrighted work (*i.e.*, by creating a derivative work), ROD submits that any such precedent was overruled by the Supreme Court's subsequent *Andy Warhol Found.* and *Petrella* decisions, and thus is no longer good law.  Indeed, such an interpretation of *Harney* would also contradict the First Circuit's earlier *Coquico* decision, and thus *Harney* would have to be ignored in favor of the earlier precedent.[27]  Indeed, given that subsequent First Circuit

---

exclusive rights to reproduce and distribute not only exact "copies" of the toy but also "derivative works" based upon it. 17 U.S.C. § 106. A person who trespasses upon any of these exclusive rights may be held liable for copyright infringement").

[25]    *See Ets-Hokin v. Skyy Spirits, Inc.*, 323 F.3d 763 (9th Cir. 2003) (reaching similar result in another photography recreation case).

[26]    *See* 17 U.S.C. § 101 (definition of "architectural work").

[27]    *See United States v. Perez*, 89 F.4th 247, 250 (1st Cir. 2023) (under law of the circuit doctrine, "newly constituted panels must follow the rulings of preceding panels that are 'directly (or even closely) on point'"; *quoting United States v. Guzman*, 419 F.3d 27 (1st Cir. 2005)), *cert. denied*, 145 S. Ct. 1469 (2025); *see also Arnold v. U.S. Dep't of Interior*, 213 F.3d 193, 196 (5th Cir. 2000) ("under the rule of orderliness, to the extent that a more recent case contradicts an older circuit case, the newer language has no effect").

cases continue to recognize the derivative works exclusive right,[28] the First Circuit clearly does not accept the EAP Defendants' interpretation of *Harney*, which would eviscerate the 17 U.S.C. § 106(2) exclusive right to create derivative works.

**IV.    The EAP Defendants' "Thin Copyright" Argument is Meritless.**

The EAP Defendants also ask this Court to adopt a minority rule first adopted by the Eleventh Circuit in *Intervest Const., Inc. v. Canterbury Estate Homes, Inc.*, 554 F.3d 914 (11th Cir. 2008) ("*Intervest*"), which held that architectural works copyrights are all inherently thin, and therefore making even minor changes to them evades infringement.  While *Intervest* is (at least for now) the law in the Eleventh and Seventh Circuits, it has been rejected by most other circuit and district courts as being contrary to the text and legislative history of the AWCPA.  Its reasoning is demonstrably flawed, and most critically it is contrary to First Circuit precedent.    This Court should not follow it.

    A.    The *Intervest* Rule is Simply Wrong.

The fundamental logic of the *Intervest* "thin copyright" rule goes as follows:

- Architectural works are composed of "individual standard features;"

- Under the AWCPA, "individual standard features" are not themselves protected by copyright;

- Therefore, architectural works are nothing but compilations of unprotected elements;

- Therefore, architectural works are comparable to compilation works;

- Therefore, because compilation works have only "thin" copyrights, ***all*** architectural works must also have "thin" copyrights ***as a matter of law***.[29]

---

[28]    *E.g., Perea*, 13 F.4th at 52.

[29]    The *Intervest* rule is absolute, and thus sweeps with an incredibly broad brush.  It treats even the most exquisite examples of architectural design (*e.g.*, a new work by I.M. Pei or Frank Gehry) as the equivalent of a telephone directory: a compilation protected from verbatim

This conclusion – that as a matter of law, **all** architectural works copyrights are necessarily "thin" – was unprecedented, and indeed *Intervest* cited no authority at all for its novel conclusion that Congress intended that, except for the specific limitations contained in 17 U.S.C. § 120, architectural works be given dramatically **less** protection than other categories of protected works.

The AWCPA added "architectural works" to the categories of protected works covered by 17 U.S.C. § 102.  It did not add them to "compilations and derivative works" covered by 17 U.S.C. § 103.  This textual structure of the AWCPA belies *Intervest*'s conclusion that Congress meant to treat "architectural works" as compilations governed by § 103.  Similarly, when Congress intended to restrict the rights of architectural works copyright owners, it knew how to do that, as shown by the specific limitations included in 17 U.S.C. § 120 (which was also part of the AWCPA).  Nothing in § 120 even remotely supports *Intervest*'s massive contraction of the rights of architectural works copyright owners, and indeed the statutory construction principle of *expressio unius est exclusio alterius* contradicts the idea that Congress intended that result.  *Intervest* was nothing more than judicial legislating, with a panel of judges rewriting the AWCPA to suit their preferences.

Lest there be any doubt that that is what happened, the legislative history of the AWCPA squarely contradicts *Intervest*:

> As a result of the incorporation of the general standard of originality for architectural works, determinations of infringement of architectural works **are to be made according to the same standard applicable to all other forms of protected subject matter**. The references in the definition of "architectural work" to "overall form," and to the nonprotectibility of "individual standard features" **are not intended to indicate that a higher standard of similarity is required to prove infringement of an architectural work, or that the scope of protection of architectural works is limited to verbatim or near-verbatim copying**.[30]

---

reproduction but not much else.  As detailed *infra*, that was clearly not what Congress intended in passing the AWCPA.

[30]    H.R. Rep. No. 101-735, p. 21 (1990) (emphasis added).

The Second Circuit has rejected *Intervest* based on this clear legislative history:

> When Congress added architectural works to the list of copyrightable subject matter, it made clear that it wanted architectural works analyzed no differently than other works . . . . *Intervest* contravenes Congress' intent by treating architectural works differently than other works and failing to determine what in architecture — beyond mere arrangement — is copyrightable").[31]

Tellingly, *Intervest* and its progeny do not even ***mention*** this contrary legislative history, just as they ignored basic canons of statutory construction.

Nor do *Intervest* and its progeny address another elephant in the room.  As the First Circuit has recognized, the AWCPA was passed in order to bring this country into compliance with its treaty obligations under the Berne Convention.[32]  Article 2(1) of the Berne Convention requires member states to protect works of architecture and related works.  Article 2(3) requires that this protection also extend to "alterations" of covered works, thus requiring protection of not only exact copies of architectural works but also derivative architectural works.  These treaty obligations are further augmented by the Agreement on Trade-Related Aspects of International Property Rights ("TRIPS"), which requires member states comply with Articles 1-21 of the Berne Convention.[33]

---

[31]    *Zalewski v. Cicero Builder Dev. Inc.*, 754 F.3d 95, 103 n.17 (2d Cir. 2014).

The Second Circuit is hardly alone in rejecting *Intervest.*  *See, e.g.*, *Bldg. Graphics, Inc. v. Lennar Corp.*, 708 F.3d 573, 580 n.3 (4th Cir. 2013); *Charles W. Ross Builders v. Olsen Fine Home Bldg.*, 496 Fed. Appx. 314, 319 (4th Cir. 2012); *Design Basics, L.L.C. v. DeShano Companies, Inc.*, No. 10-14419, 2012 WL 4321313, op. at 12-13 (E.D. Mich. Sept. 21, 2012); *Frank Betz Assocs., Inc. v. J.O. Clark Const., L.L.C.*, No. 3:08-CV-159, 2010 WL 4628203, op. at 6 n.5 (M.D. Tenn. Nov. 5, 2010); *Plan Pros, Inc. v. Zych*, No. 8:08CV125, 2009 WL 5213997, op. at 4 n.5 (D. Neb. Dec. 22, 2009).

[32]    *See T-Peg*, 459 F.3d at 109; *see also Scholz Design*, 691 F.3d at 188.

[33]    *See* TRIPS Art. 9; *see generally Golan v. Holder*, 132 S.Ct. 873, 879-81 (2012); World Trade Organization, "Overview: the TRIPS Agreement" (WTO 2016).

It is a longstanding canon of statutory construction that federal statutes not be interpreted in a fashion that violates this country's international obligations.[34]  Yet *Intervest* and its progeny have interpreted the AWCPA in a fashion that does not protect derivative architectural works (as required by the Berne Convention and TRIPS), but in fact immunize unauthorized derivative works from liability.  Making matters worse, they do so without even addressing this critical issue.  This Court should not follow that example.

Moreover, as commentators[35] and even some Eleventh Circuit judges[36] have observed, the basic logic of *Intervest* is seriously flawed.  Under *Intervest*'s reasoning, almost all copyrights – not just architectural works copyrights – must similarly be "thin" **as a matter of law**.  Music is but the selection and arrangement of the 120 notes audible to humans.  Because individual notes are not protected, music is therefore "like" a compilation of unprotected elements, and thus must be given the narrowest copyright protection.  Literature, poetry, and other textual works are merely the selection and arrangement of uncopyrightable individual letters, words, and phrases, so under the logic of *Intervest,* copyrights in literary works must similarly be treated as compilations, with minor modifications negating infringement and immunizing even willful piracy.  Computer code is nothing more than a series of commands taken from preexisting programming languages, so it too must be treated as just a "compilation" of preexisting elements, infringed only by works that

---

[34]    *See Murray v. Schooner Charming Betsy*, 6 U.S. 64, (1804) (Marshal, J.) ("an act of Congress ought never to be construed to violate the law of nations if any other possible construction remains"); *United States v. Trinidad*, 839 F.3d 112 (1st Cir. 2016) (recognizing the *Charming Betsy* canon of construction).

[35]    *E.g.*, Turkewitz, Neil, "*Copyright and Architectural Works: Restoring Foundational Principles of Authorship and Infringement*," Medium.com (Dec, 13, 2019).

[36]    *See Home Design Servs., Inc. v. Turner Heritage Homes Inc.*, 825 F.3d 1314, 1330 (11th Cir. 2016) (Rosenbaum, J., concurring; arguing that *Intervest* was a "wrong turn" that the Eleventh Circuit should revisit).

demonstrate "near identity."  Such is, of course, not the law, and this elucidates the fundamental

flaw in *Intervest*.[37]

> D.      *Intervest* is inconsistent with controlling First Circuit precedent.

In *T-Peg*, the First Circuit reversed a summary judgment that no reasonable jury could find

that the architectural works at issue were substantially similar.  The court ruled that the "ordinary

observer" test applied in that case, and that while "[d]ifferences between the works have some

effect on the inquiry,  . . . ***the mere existence of differences is insufficient to end the matter in***

***the defendant's favor***."[38]  This holding squarely contradicts the rule of *Intervest,* which is that

even modest differences or changes preclude infringement of an architectural works copyright.

This controlling *T-Peg* decision thus did not treat architectural works as "compilations" nor

otherwise find that the copyright in architectural works was "thin," nor did it treat architectural

works differently from other categories of copyrightable works.[39]

Further, as detailed *supra*, the First Circuit (and the Supreme Court) recognize the

copyright owner's exclusive right to create derivative works.  In contrast, *Intervest* and its progeny

do not; indeed, they conspicuously never even mention or discuss this statutory exclusive right.

Thus, even where juries find that a defendant copied protected aspects of an architectural work,

courts applying *Intervest* find that making modest changes to a work (*i.e.*, creating a derivative

---

[37]    *See Zalewski,* 754 F.3d at 104; *see also Rottlund v. Pinnacle Corp.*, 2004 U.S. Dist. LEXIS 16724, *49 (D. Minn. 2004) (architectural works case; rejecting similar argument, noting "Defendants would have the Court find that nothing protectable remains after filtering the individual elements, the drawings merely being sheets of paper shareable amongst architects and builders to copy at will").

[38]    *T-Peg,* 459 F.3d at 112 (emphasis added).

[39]    *Intervest* is also inconsistent with the law of other circuits, which like *T-Peg* treat architectural works no different than other categories of protected works, as Congress intended. *E.g., Rottlund Co. v. Pinnacle Corp.,* 452 F.3d 726 (8th Cir. 2006); *Sturdza v. United Arab Emirates,* 281 F.3d 1287, 1299 (D.C. Cir. 2002);

work) is enough to escape liability.[40]  This is inconsistent with the First Circuit precedents cited *supra*, as well as the Supreme Court's recent *Andy Warhol Found.* decision.

*Intervest* is bad law and worse policy.  This Court should refuse to follow it.

E.    Even if this Court follows the *Intervest* Rule, the EAP Defendants Still Lose.

Under *Intervest*, only exact or near exact copying of an architectural work is actionable. As detailed above, that is contrary to controlling First Circuit precedent and Supreme Court authority, as well as the text of the statute and the legislative history of the AWCPA.   However, even under the defective rule of *Intervest*, the EAP Defendants still lose.

As detailed *supra*, the EAP Defendants reproduced and distributed literal copies of ROD's floorplans.   Even if ROD's architectural works copyrights are "thin," such literal reproduction and distribution of its architectural drawings is still infringement.   Additionally, the rule of *Intervest* would apply *only* to ROD's architectural works copyright – it does not, and cannot, apply to ROD's graphical works copyrights.

## V.    The EAP Defendants Misanalyze the Defense of *De Minimus* Copying.

Finally, the EAP Defendants attempt to excuse Defendants' admitted reproduction and distribution of literal copies of ROD's works by claiming such was *de minimus* copying as a matter of law.   The EAP Defendants are wrong.

As detailed *supra*, the EAP Defendants first misrepresent the record by claiming that they merely downloaded and distributed *photographs* of a house constructed from ROD's copyrighted design.   While they did, in fact, do that, the EAP Defendants ignore that they also reproduced and

---

[40]    *See, e.g., Home Design Servs.,* 825 F.3d at 1322; *cf. Sheldon,* 81 F.2d at 56 ("no plagiarist can excuse the wrong by showing how much of his work he did not pirate"); *Nichols v. Universal Pictures Corp.,* 45 F.2d 119, 121 (2d Cir. 1930) (copyright infringement cannot be limited to exact copying, "else a plagiarist would escape by immaterial variations").

distributed verbatim copies of ROD's floorplan **drawings**.

Defendants claim that their use of ROD's materials was *de minimus* because they only used them in marketing the house in question for a few months (from January through March 2024), and removed them after ROD sent a cease and desist letter.  But to the best of ROD's research, no court has ever used the length of time illegal copies were distributed as the yardstick for determining whether the infringement was *de minimus*.   Indeed, caselaw in this district rejects it:

> Defendant's argument that it possibly displayed the Copyrighted Works on its website only a single time and therefore, the amount of copying was de minimis [Dkt. 36 at 17-18], is inapposite. The number of times Defendant displayed the 12 Photos is irrelevant in the de minimis analysis. Rather, the de minimis doctrine pertains to the extent of copying and assessing the strength of a plaintiff's proof of substantial similarity.[41]

*De minimus* copying usually refers to copying of unprotected elements of a work (*e.g.*, copying an unprotected scientific formula ("$E=mc^2$") from a textbook), or an undisputably trivial use of the work ("posting of a New Yorker cartoon on a refrigerator").[42]   It can also be part of the determination of the third "fair use" factor (amount and substantiality of the portion of the work used).[43]   (This latter question of *de minimus* copying is not present in this case, as no Defendant has pleaded a fair use affirmative defense.)

More commonly, a defense of *de minimus* copying may apply when a copy of a work is used in a wholly incidental manner.  For example, if a photograph or painting appears for a few seconds in the background of an audiovisual material, "filmed at such a distance and so out of focus that a typical program viewer would not discern any decorative effect that the work of art

---

[41]    *Stross v. Bos. Web Power LLC*, No. 20-CV-11341-AK, 2023 WL 6390594, at *5 (D. Mass. Sept. 29, 2023).

[42]    *See, e.g., Ringgold v. Black Entm't Television, Inc.*, 126 F.3d 70, 74 & n.2 (2d Cir. 1997) (discussing the issue).

[43]    *See id.*, 126 F.3d at 75-76;  *Holy Transfiguration*, 685 F. Supp. 2d at 227-28

contributes to the set," that may be considered *de minimus* copying.[44]  But where the use of the image in the background is not wholly incidental, but instead the work could be perceived and recognized, courts reject claims of *de minimus* copying.[45]

*De minimus* copying can also apply when so little of the copyrighted work is copied that there is no substantial similarity.  However, this concept:

> should not be misunderstood. That the copying involved only a small portion of the plaintiff's work does not by itself make the copying permissible. Indeed, "even if the similar material is quantitatively small, if it is qualitatively important, the trier of fact may properly find substantial similarity."  As a result, de minimis copying is best viewed not as a separate defense to copyright infringement but rather as a statement regarding the strength of the plaintiff's proof of substantial similarity.[46]

None of these situations of *de minimus* copying are present in this case.  Defendants copied and distributed the entirety of the critical part of ROD's architectural design: the floorplans.  Defendants' reproduction and distribution of ROD's drawings continued over a period of months, when they were used to design the house in question, to do a marketing study, in the successful marketing of that unconstructed house in early 2024, and even after there was a sales contract for the house.  *See* ROD's RSUMF p.3 and evidence cited therein.  As Sliney admits, ROD's floorplan drawings were part of the MLS listing that she posted in early January 2024.  Doc. 40-10, p.4.  As

---

[44]  *Ringgold,* 126 F.3d at 77.

[45]  *See, e.g., id.*, 126 F.3d at 77.

[46]  *Situation Mgmt. Sys., Inc. v. ASP. Consulting LLC*, 560 F.3d 53, 59 (1st Cir. 2009); *see also Harper & Row Publishers v. Nation Enterprises*, 471 U.S. 539, 564-66 (1985) (rejecting *de minimus* copying argument despite less than 0.2% of Gerald Ford's autobiography being copied); *Cream Records, Inc. v. Joseph Schlitz Brewing Co.*, 754 F.2d 826, 828 (9th Cir. 1985) (use of a ten note ostinato from "The Theme from Shaft" in a commercial featuring Richard Roundtree was infringing); *Roy Exp. Co. Establishment of Vaduz, Liechtenstein, Black Inc., A.G. v. Columbia Broad. Sys., Inc.*, 503 F.Supp. 1137, 1145 (S.D.N.Y. 1980) (cited with approval in *Harper & Row*; use of 55 seconds out of a 1.5 hour movie (0.1%) found infringing); *cf. Holy Transfiguration*, 685 F. Supp. 2d at 227-28 (copying of one of seventy-seven homilies, covering approximately 3 pages of 383 pages of text, was still sufficient to be copyright infringement).

shown by the listing attached to the LaBeaux declaration and the attachments to it, these images were then spread further as other area realtors reposted the images in Sliney's MLS listing.   *See* ROD's RSUMF p. 3 and evidence cited therein.  Sliney's deposition testimony further admits that using these images was not incidental but instead was central to her marketing of an unconstructed house.  *See id.*

This case simply does not present any issue of *de minimus* copying, much less one where summary judgment for the EAP Defendants is warranted.

### CONCLUSION

Under the undisputed facts of this case, binding First Circuit law and well-settled principles of copyright law, the EAP Defendants' arguments are meritless, and the instant Motion should be denied.

Dated:  Oct. 2, 2025

*/s/ Louis K. Bonham*
Louis K. Bonham
(admitted *pro hac vice*)
Texas Bar No. 02597700
OSHA BERGMAN WATANABE
& BURTON LLP
1100 Louisiana Street, Suite 4900
Houston, Texas 77002
713.228.8600
*bonham@obwb.com*

*/s/ Jeffrey S. Baker*
Jeffrey S. Baker, Esq.
Baker and Assocs.
Suite 100
2 W Hill Pl
Boston MA 02114
617 953 6747
BBO#544929
Bakerlaw@aol.com

**Counsel for Plaintiff,**
**Kieran Joseph Liebl, Inc. d/b/a Royal**
**Oaks Design, Inc.**

- 21 -

## CERTIFICATE OF SERVICE

I certify that on October 2, 2025, I filed the foregoing document with the Clerk of the United States District Court using the CM/ECF system, which will send notification electronically to all counsel of record.

*/s/ Louis K. Bonham*
Louis K. Bonham